## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JOSEPH GARDI,                )
                                   )     CASE NO.    23 cv 482

      Plaintiff,         )

                                   )     JUDGE

    -vs-                 )

                                   )

MATT DAMSCHRODER, DIRECTOR,  )
Ohio Dept. Of Job and Family      )
Services, in their official and individual  )
capacity; OHIO DEPARTMENT OF JOB  )    **VERIFIED**
AND FAMILY SERVICES;  OHIO      )    <ins>**COMPLAINT (CIVIL RIGHTS)**</ins>
DEPARTMENT OF MEDICAID; and   )    Trial by Jury Demanded
MAUREEN M. CORCORAN, DIRECTOR )
Ohio Department of Medicaid, in their  )
official and individual capacity.      )
                                   )
                                   )
      Defendants.       )

## I. INTRODUCTION

1. Plaintiff Joseph Gardi ("Plaintiff") applied for the Specialized Recovery Services ("SRS") program, which is administered and controlled by the defendants, to obtain medically necessary dental and vision care. To administer the SRS, Defendants implemented OAC 5160-43, which limits eligibility to individuals with a "qualifying diagnosis" listed in OAC 5160-43-02(A)(2). Defendants denied Plaintiff's application solely because he does not a listed diagnosis.

2. Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution, the Medicaid Act, the Patient Protection and Affordable Care Act, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973.

3. Plaintiff seeks injunctive relief, declaratory relief, damages, attorney's fees, costs, and all further relief that is in the best interest of justice.

## II. JURISDICTION AND VENUE

4. This action is brought pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18112, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Plaintiff's claims for a preliminary injunction, a permanent injunction, declaratory relief, and compensatory damages are authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 12133, 29 U.S.C. § 794a, and 42 U.S.C. § 1983, and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

6. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b)(1) because the events giving rise to these claims occurred in Medina County, Ohio.

## III. PARTIES

7. Plaintiff is a resident of Medina County, Ohio.

8. Defendant Ohio Department of Job and Family Services ("ODFJS") is an agency of state government created under O.R.C. 121.02(H). Defendant ODJFS receives federal financial assistance. It administers or supervises the Ohio Medicaid Program. Defendant ODJFS's principal place of business is in Columbus, Ohio.

9. Defendant Matthew Damschroder is the director of Defendant ODFJS and is charged with supervising or administering the Ohio Medicaid program. They are sued in their official capacity.

10. Unless otherwise specified "ODFJS" refers to Defendant ODFJS and Defendant Damschroder

collectively.

11. Defendant Ohio Department of Medicaid ("Defendant ODM") is an agency of state government created under O.R.C. 121.02(T). Defendant ODFS supervises and Defendant ODM administers the Ohio Medicaid and the Specialized Recovery Services programs. Defendant ODM receives federal financial assistance. Defendant ODM's principal place of business is in Columbus, Ohio.

12. Defendant Maureen M. Corcoran is the director of the Defendant ODM and is charged with administering the Ohio Medicaid and the Specialized Recovery Services programs program. They are sued in their official capacity.

13. Unless otherwise specified "ODM" refers to Defendant ODM and Defendant Corcoran collectively.

14. Unless otherwise specified, "defendants" refers to ODM and ODJFS collectively.

## IV. CONSTITUTIONAL AND STATUTORY SCHEME

### A. **Equal Protection Clause**

15. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

### B. Medicaid Act

16. Authorized under Title XIX of the Social Security Act of 1965, Medicaid is a joint federal-state program that provides access to health care for Medicaid-eligible individuals. 42 U.S.C. § 1396-1396w-5 ("Medicaid Act"). The Medicaid is enforceable pursuant to 42 U.S.C. § 1983,

17. The purpose of Medicaid is to enable states to "furnish [] medical assistance" to individuals "whose income and resources are insufficient to meet the cost of necessary medical services." 42 U.S.C. § 1396-1.

18. If a State participates in the Medicaid program, it must comply with all the provisions of the Medicaid Act and implementing regulations. 42 U.S.C. § 1396a.

19. States are required to administer Medicaid "in the best interests of recipients." 42 U.S.C. § 1396a(a)(19).

20. The Medicaid Act requires participating state to establish or designate a single state agency charged with administering or supervising the state's Medicaid program. 42 U.S.C. § 1396a(a)(5).

21. Eligibility to participate in a state Medicaid program includes two categories of applicants. "Categorically needy" individuals are eligible solely because of their low income. "Medically needy" individuals have sufficient income to afford basic living expenses and are eligible because they cannot afford expensive medical care.

22. A state Medicaid Program must provide coverage for services when they are they are "medically necessary" for a particular participant.

23. "A Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service … to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c). This provision is commonly referred to as the "availability provision."

24. A Medicaid agency must provide the services available to any individual in the categories of "categorically needy" and "medically needy" in an equal in amount, duration, and scope for

other all beneficiaries within the categories. 42 C.F.R. 440.240. This provision is commonly referred to the "comparability provision."

25. "Medical necessity" for coverage of procedures, items, or services is established when, without treatment, the person can be expected to suffer prolonged, increased, or new morbidity; impairment of function; dysfunction of a body organ or part; or significant pain and discomfort. OAC 5160-1-01.

### C. Patient Protection and Affordable Care Act

26. Congress enacted the Patient Protection and Affordable Care Act (hereinafter "ACA"), codified at 42 U.S.C. § 18112, to increase the number of Americans covered by health insurance.

27. The ACA provides that an individual shall not, on the ground prohibited under Section 504 of the Rehabilitation Act be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance.

### D. American with Disabilities Act

28. The Americans with Disabilities Act, codified at 42 U.S.C. §§ 12101-12181 (hereinafter "ADA") was enacted for the purpose of the "elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

29. Title II of the ADA prohibits discrimination against individuals with disabilities by public entities, including state and local governments, their departments, and agencies. 42 U.S.C. §§ 12131, 12132. "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. §§ 35.130(b)(1)(iv), 35.130(b)(7), 35.130(b)(8), and 35.130(d).

30. The ADA prohibits segregation of people with disabilities into institutions and requires services, programs and activities of state and local governments to be administered in "the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

31. The ADA provides: "A public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities. . . ." 28 C.F.R. § 35.130(b)(3).

32. The ADA requires state governments and agencies to make reasonable modifications to policies, practices and procedures to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

### E. Section 504 of the Rehabilitation Act

33. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (hereinafter "Section 504"), prohibits discrimination against individuals with disabilities by any program or activity, including any department or agency of a State government, receiving Federal financial assistance. 29 U.S.C. §§ 794(a) and (b). "No otherwise qualified individual with a disability [...] shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

assistance [. . .]." 29 U.S.C. § 794; 45 C.F.R. §§ 88.4(a), 88.4(b)(1)(i), (iv), and (vii); 84.4(b)(2); 84.52(a)(1), (4), and (5).

34. Section 504 prohibits segregation of people with disabilities into institutions and requires services, programs and activities of state and local governments to be administered in "the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 41.51(d).

35. Section 504 provides: "A recipient [of Federal financial assistance] may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to handicapped persons. . . ." 28 C.F.R. § 41.51(b)(3)(i); 45 C.F.R. § 84.4(b)(4).

36. Section 504 requires federally funded state governments and agencies to make reasonable modifications to policies, practices, and procedures to avoid discrimination solely on the basis of disability. 29 U.S.C. § 794(a).

## V. STATEMENT OF FACTS

37. Ohio participates in the Medicaid Act in cooperation with the federal government.

38. Ohio designated Defendant ODJFS as the single state agency charged with administering or supervising Ohio's Medicaid program.

39. Defendant ODJFS supervises ODM and ODM administers the Medicaid program.

40. Defendants implemented OAC 5160-43 to administer the SRS program (SRS) that provides home and community-based services (HCBS) [including dental and vision care].

41. To participate in SRS, OAC § 5160-43 states: (A) An individual may be eligible for enrollment in the specialized recovery services program if they meet all of the following: (1) Be at least twenty-one years of age; (2) Be determined eligible for Ohio medicaid in accordance with Chapters 5160:1-1 to 5160:1-5 of the Administrative Code; (3) Have a . . . a diagnosed chronic condition as listed in qualifying diagnosis appendix which is available on the ODM website at https://medicaid.ohio.gov/resources-for-providers/special-programs-and-initiatives/srs.

42. OAC § 5160-43 was last reviewed on August 1, 2021 and October 15, 2026 is the next the review date.

   A. **Plaintiff is otherwise qualified to participate in the SRS Program under OAC 5160-43.**

43. Plaintiff is 53 years old.

44. Plaintiff is able afford his basic living expenses but is unable to afford the expenses of his medically necessary medical care. Plaintiff is "medically needy."

45. In 2018, Plaintiff was admitted to a hospital for inpatient treatment due to a diagnosed chronic condition.

46. Plaintiff is a participant in the Medicare program.

47. Plaintiff resides in a home and community-based setting.

48. Plaintiff is willing to participate in an initial assessment using the "Adult Needs and Strengths Assessment (ANSA)" (8/2021)

49. Plaintiff demonstrates needs related to the management of his diagnosed chronic condition.

50. Plaintiff currently has a need for one or more of the specialized recovery services to maintain stability, improve functioning, prevent relapse, maintain residency in the community, and be assessed and found that, if not for the provision of home and community-based services (HCBS) for stabilization and maintenance purposes, he would decline to prior levels of need

(i.e., subsequent medically necessary services and coordination of care for stabilization and maintenance is needed to prevent decline to previous needs-based functioning).

51. Plaintiff demonstrates a need for specialized recovery services and has not otherwise receive those services.

52. Plaintiff has needs that can be safely met through the program in an HCBS setting.

53. Plaintiff will participate in the development of a person-centered service plan.

   B. **Plaintiff is a person with disabilities.**

54. In 2016, the Social Security Administration determined that he was eligible to receive Social Security Disability Income.

55. Plaintiff has been diagnosed with at least 26 chronic conditions. His diagnoses include:

   a. Deficiency of cell mediated immunity [084.8]

   b. lmmunoglobulin heavy chain deficiency [080.3]

   c. Organic lead compounds causing toxic effect [T56.0X1S]

   d. Effects of overexposure to electromagnetic radiation [T66.XXXS]

   e. Autonomic nervous system disorder with neurodegenerative disorder [G31.9]

   f. Toxic encephalopathy [G92]

   g. Toxic effect of lead and its compounds, accidental (unintentional), sequela [T56.0X1S]

   h. Degenerative disease of nervous system, unspecified [G31.9]

56. On April 1, 2021, Plaintiff's doctors wrote: "Mr. Gardi's condition is very unstable and his prognosis is guarded at this time. It is my medical opinion that Mr. Gardi is totally disabled by his neurotoxicity, immune system dysfunction and sensitivities." See Exhibit A, April 1, 2021

letter, Dr. Elizabeth Seymour, M.D., A.B.F.M, F.A.A.F.P of the Environmental Health Center of N. Texas.

57. Plaintiff's diagnosed medical conditions affect his daily life activities in that, when his medical conditions are exacerbated, he may be unable to maintain sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling for more than 30 minutes. He may also have difficulty with organization and skills and other neurocognitive functions, i.e., memory, concentration, social interaction, adaptation, and fine manipulation. Id.

C. **Defendants denied Plaintiff the opportunity to participate in or benefit from the SRS program solely because he does not have a qualifying diagnosis listed in OAC 5160-43-02(A)(3).**

58. Plaintiff told a representative of Defendant ODFJS that he needed dental and vision services. Defendant ODJFS directed him to apply for the SRS program. Plaintiff's medical need for dental services is acute. He needs vision services because inflammation and brain fog that often makes his vision blurry.

59. On April 7, 2022, Plaintiff applied for the SRS program through the Medina County Department of Job and Family Services.

60. On April 11, 2022, Defendants referred Plaintiff to Carestar, Inc. ("Carestar") for an initial assessment. Carestar contracts with Defendants to provide assessments and case management services for the Home and Community Based Services Waiver program, including the SRS program.

61. Plaintiff submitted to Defendants and Carestar the attached April 1, 2021 letter and a June 16, 2021 letter from Dr. Seymour. Exhibit A and Exhibit B, Certified State Hearing Record, June 16, 2021 Diagnosis Verification letter at page 47.

62. On May 31, 2022, Carestar denied his application for enrollment because he did not have a qualifying diagnosis under OAC 5160-43-02(A)(3).

63. Plaintiff appealed. At the State Hearing, Plaintiff testified that he has numerous chronic health diagnoses, desperately needed dental treatment, and it was a medical necessity that he participate in the SRS program because he is immuno-compromised and needed dental treatment to prevent an infection from developing in his mouth. See Exhibit C, Certified Administrative Appeal Record, Plaintiff's July 25, 2022 Notice of Appeal, at 98. He testified that an infection could spread to his brain and exacerbate his toxic encephalopathy and neurodegenerative disorder diagnoses.

64. Defendants affirmed Carestar's decision to exclude Plaintiff from the SRS program solely because he did not have a qualifying diagnosis.

65. Plaintiff requested an Administrative Appeal. In his appeal, Plaintiff wrote: "I request an urgent appeal of this matter. Knowing that I have been diagnosed with toxic encephalopathy and neurodegenerative disorder should show the severity of my illness and be more than sufficient to qualify me for the program. These medical diagnoses are completely debilitating and require continued dental/vision care. While impulse disorders such as an "anxiety disorder" and "gender identity disorder" are approved. I frankly find this completely discriminatory on my denial of coverage. This said denial of the program could cause great serious medical harm to me" Id. at 99. He described this matter as "life threatening." Id.

66. In the July 26, 2022 Administrative Appeal Decision, Defendants wrote "Appellant reported that he had many diagnoses that were chronic and needs dental work done due to fears of an infection impacting swelling on his brain." See Exhibit C Administrative Appeal Summary, at 2.

67. Defendants affirmed the State Hearing Decision solely because none of Plaintiff's diagnoses are on the list of "qualifying diagnoses" under OAC 5160-43-02(A).

68. Plaintiff filed an appeal of the Administrative Appeal Decision to the Common Pleas Court of Medina County.

69. Notwithstanding Plaintiff's medical need for dental and vision services, Defendants did not treat Plaintiff like other similarly situated medically needy individuals solely because he did not have a "qualifying diagnosis."

70. Defendants do not have a rational, legitimate state interest for excluding Plaintiff from the SRS program.

71. Defendants implemented OAC 5160-42-(A)(3) with the intent to discriminate against medically needy individuals that do not have a "qualifying diagnosis."

72. Defendants' enforcement of OAC 5160-42-(A)(3) has a disproportionate impact on persons that are medically needed, but do not have a "qualifying diagnosis."

73. Defendants arbitrarily failed to make medical services available to Plaintiff solely because of his diagnoses, type of illness, or condition.

74. Defendants did not provide to Plaintiff the services that are available to other medically needy individuals.

75. Defendants did not provide to Plaintiff the services in an equal in amount, duration, and scope that they make available for other medically needy individuals.

76. Despite Plaintiff's urgent request for assistance, Defendants did not provide to Plaintiff a reasonable and meaningful procedure to request treatment for diagnoses that do not appear on the list of "qualifying diagnoses" of OAC 5160-43-02(A)(2).

77. Despite Plaintiff's urgent request for assistance, Defendants did not offer a reasonable modification and/or accommodation from the operation of OAC 5160-43.

**D.      Without immediate dental treatment, Plaintiff will suffer irreparable harm.**

78. Without obtaining dental services, which are available through the SRS program, Plaintiff can be expected to suffer prolonged, increased or new morbidity; impairment of function; dysfunction of a body organ or part; or significant pain and discomfort.

79. On December 12, 2022, Plaintiff's family doctor, Irena Kodz, M.D. of the Southwest General Medical Group, Inc., wrote: "In my medical opinion [Plaintiff's] list of current diagnoses are more severe than the qualifying diagnoses that are listed to get dental and vision benefits. He needs vision and dental benefits granted. See Exhibit D, December 12, 2022 Dr. Kodz letter.

80. On December 13, 2022, Dr. Kodz wrote: "My patient Joseph Stephen Gardi has many medical problems that are interconnected including medical, dental and vision health. All of these health concerns must be considered for coverage." Exhibit E, December 13, 2022 Dr. Kodz letter. She listed Plaintiff's diagnoses and ended the letter stating: In my medical opinion the medical conditions are related and causative reason to vision and dental problems. Dental and vision coverage is advised." Id.

81. On January 6, 2023, Dr. Samantha Dufinetz, DDS, of the Lakewood Dental Group wrote

> Mr. Gardi presented to our office on January 6, 2023 for a Comprehensive Exam. He clinically presented with a fractured #9 to the gumline, pain in his left side, swelling and tenderness in his left lymph nodes and generalized build up on all dentition.
> Gardi stated that he is unable to receive radiographs due to previous overexposure to electromagnetic radiation. Regarding Mr. Gardi's medical comorbidities, he is at

> an increased risk for decay and infection due to his immunosuppression and previous therapy. He should be seen regularly for care especially because he is unable to receive x-rays for early diagnosis. Early clinical diagnosis and treatment of dental issues are crucial to his overall health. With regular dental care and treatment, the prognoses of any existing dental conditions are good and manageable. Without regular care, the prognosis of any condition worsens as there may be missed decay or infection that could easily spread throughout his body if not caught early.
>
> In my medical opinion, his list of current medical diagnoses are more severe than the qualifying diagnoses that are listed to get dental benefits and his coverage should be reconsidered. Any delay in necessary dental treatment could lead to long term dental and medical complications.

Exhibit F, January 6, 2023, Dr. Dufinetz letter.

82. Plaintiff currently has an infection in his mouth. His doctor prescribed an antibiotic, which due to his immune system's deficiencies, may slow the infection, but will not cure the infection.

83. Since January 27, 2023, Plaintiff has experienced weakness and numbness in his left shoulder, arm, and hand my body felt strange. He experienced these same conditions in December 2020.

84. In a December 29, 2020 letter, Dr. Alphonso Monzo, III, LMT, MDiv, LPNM, ND wrote:

> On December 29, 2020, I saw Mr. Gardi at my clinic, and he was having serious lymphatic congestion in his arm affecting his already weakened immune system. . . . This I believe has lead to some for, of bacterial[,] parasitic or virus infection affecting the nerves in his arms. . . Mr. Gardi presents symptoms of weak grip and lack of feeling in the fingers of his left hand.
>
> . . . [D]ue to his immunodeficiency he has an exceedingly harm fighting off infections in his body[.] . . . Many people have lost limbs or the use of limbs due to problems with the Lymphatic system.

Exhibit G, December 29, 2020 letter.

**E. Granting Plaintiff Injunctive Relief would not harm others and is in the public interest.**

85. Making dental services available to Plaintiff, will not harm or oppress Defendants.

86. Any harm to Defendants is substantially outweighed by the benefit Plaintiff would receive from dental services. Without treatment, the infection in Plaintiff could spread to his brain and throughout his body. This could result in more serious and permanent symptoms.

87. Providing dental services to Plaintiff is in the public interest because without treatment, he will likely be hospitalized and/or institutionalized.

88. Providing preventative and home and community-based services to avoid hospitalized and/or institutionalized, is in the public interest.

**F.    Plaintiff has been and continues to suffer harm as direct result of the actions and inactions of Defendants.**

89. Defendants discriminated against Plaintiff solely because his disabilities and/or his diagnoses, illness and/or condition.

90. Defendants knowingly acted and/or failed to act in a manner likely to be injurious to the physical and mental welfare of Plaintiff.

91. Defendants acted and/or failed to act with utter disregard to the fact that Plaintiff would likely suffer grievous harm without dental services.

92. Defendants acted and/or failed to act because Defendants did not care about the risk that Plaintiff would suffer grievous harm without dental services.

93. Defendants acted and/or failed to act with deliberate and/or with reckless indifference to Plaintiff's federally protected rights.

94. Plaintiff has suffered the exacerbation of his disabilities, physical pain, emotional distress, frustration, anxiety, sleepless nights, stigmatization, humiliation, and a loss of dignity because of Defendants' actions and/or inactions.

95. The actions and failures to act of Defendants have caused and will continue to cause Plaintiff irreparable harm, and Plaintiff has no adequate remedy at law.

VI. CLAIMS FOR RELIEF

**FIRST CLAIM**
**Deprivation of Equal Protection**
**U.S. Const. Amend. XIV**

96. Plaintiff re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

97. Defendant Damschroder acted under color of state law in the implementation and enforcement of OAC § 5160-43-02(A) and unlawfully denied Plaintiff with equal protection of the laws.

98. Defendant Corcoran acted under color of state law in the implementation and enforcement of OAC § 5160-43-02(A) and unlawfully denied Plaintiff with equal protection of the laws by treating him differently that similarly similar applicants for SRS that have a qualifying diagnoses.

99. OAC 5160-43-02(A), on its face and as applied to Plaintiff, impermissibly discriminates on the basis of diagnosis, condition, and illness, and treats Plaintiff differently from similarly situated medically needy persons who obtain dental and vision services through the SRS program.

100. Defendants lack a legitimate state interest in excluding Plaintiff from the SRS program.

101. OAC 5160-43 is in conflict with the Equal Protection Clause and it is preempted pursuant to the Supremacy Clause of the U.S. Constitution, Art. IV.

102. Plaintiff is entitled to injunctive and declaratory relief, compensatory and consequential damages, attorney's fees, and costs.

**SECOND CLAIM**
**Violation of the Medicaid Act's Availability and Comparability Requirements**

103. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs of this complaint, as though fully set forth herein.

104.    Defendant Damschroder acted under color of state law in the implementation and enforcement of OAC § 5160-43-02(A).

105.    Defendant Corcoran acted under color of state law in the implementation and enforcement of OAC § 5160-43-02(A).

106.    Defendants arbitrarily deprived Plaintiff's access to required and/ medically necessary services solely because the Plaintiff's diagnoses, type of illness, and/or condition.

107.    Defendants did not make the benefits of the SRS program available to Plaintiff and they do make the benefits of the SRS program to other "medically needy" individuals.

108.    Defendants made medical assistance to available to Plaintiff through the SRS program in an amount, duration, and scope that is less than the medical assistance made available other "medically needy" applicants for the SRS program.

109.    Defendants' actions and inactions violate the Medicaid Act's availability and comparability requirements, 42 U.S.C. § 1396a(a)(10)(A) and (B), which are enforceable by Plaintiff under 42 U.S.C. § 1983.

110.    OAC 5160-43 is in conflict with the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A) and (B), their implementing regulations, and interpretive Federal guidelines, and it is preempted pursuant to the Supremacy Clause of the U.S. Constitution, Art. IV.

111.    Plaintiff is entitled to injunctive and declaratory relief, compensatory and consequential damages, attorney's fees, and costs.

### THIRD CLAIM
### Violation of Section 1557 of the Patient Protection and Affordable Care Act

112.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

113.    Defendants, acting under color of law, excluded Plaintiff from participation in, denied Plaintiff the benefits of, and subjected Plaintiff to discrimination under the SRS program, a health program or activity, on the basis of disability.

114.    Defendants receive federal financial assistance.

115.    Defendants are "covered entities" for purposes of Section 1557 of the ACA.

116.    Defendants' actions and inactions taken under the color of state law violated Plaintiff's rights to be protected from discrimination based upon his disability, provided by Section 1557.

117.    OAC 5160-43 is in conflict with the anti-discrimination provisions of the ACA, its implementing regulations and interpretive Federal guidelines, and it is preempted pursuant to the Supremacy Clause of the U.S. Constitution, Art. IV.

118.    Plaintiff is entitled to injunctive and declaratory relief, compensatory and consequential damages, attorney's fees, and costs.

**FOURTH CLAIM**
**Violation Of Title II of the Americans with Disabilities Act**

119.    Plaintiff re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

120.    Plaintiff is an individual with disabilities within the meaning of the ADA. His impairments substantially limit one or more major life activities.

121.    Defendants denied Plaintiff's application to participate in SRS because he did not have a qualifying diagnosis under OAC 5106-43-02(A).

122.    Plaintiff was otherwise qualified to participate in the SRS program.

123.    Defendants are public entities as defined by Title II of the ADA.

124.    Plaintiff is otherwise qualified to participate in and receive the benefits of the SRS Program.

125.   Defendants denied Plaintiff opportunity to participate in and benefit from their programs and services on equal basis that is afforded to other participants eligible for SRS because of his disabilities.

126.   Defendants failed to make reasonable modifications in the applicable rules, procedures and practices as required by Title II of the ADA.

127.   Defendants utilized methods of administration that had the effect of defeating or substantially impairing the accomplishment of the objectives of the ADA.

128.   Waiving the "qualifying diagnosis" requirement would not fundamentally alter Defendants' programs, services, and activities.

129.   OAC 5160-43 is in conflict with the anti-discrimination, reasonable accommodation, and integration provision of the ADA, its implementing regulations and interpretive Federal guidelines, and it is preempted pursuant to the Supremacy Clause of the U.S. Constitution, Art. IV.

130.   Plaintiff is entitled to injunctive and declaratory relief, compensatory and consequential damages, attorney's fees, and costs.

## FIFTH CLAIM
## Violation of Section 504 of the Rehabilitation Act Of 1973

131.   Plaintiff re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

132.   Plaintiff is an otherwise qualified individual with a disability.

133.   Defendants denied Plaintiff meaningful access and an equal opportunity to participate in and benefit from Defendants' programs and activities solely because of his disabilities.

134.   Defendants are recipients of federal financial assistance.

135.   Defendants' actions and inactions constitute violations of Section 504 of the Rehabilitation Act of 1973.

136.   OAC 5160-43(A)(3) is in conflict with Section 504, its implementing regulations and interpretive Federal guidelines, and it is preempted pursuant to the Supremacy Clause of the U.S. Constitution, Art. IV.

137.   Plaintiff is entitled to injunctive and declaratory relief, compensatory and consequential damages, attorney's fees, and costs.


## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants on all claims, as follows:

A.   Issuance of a preliminary and permanent injunction directing Defendants to immediately approve Plaintiff's SRS program application and/or to act to approve Plaintiff for dental services.

B.   Declaratory judgment that Defendants denied Plaintiff medically necessary treatment and that Defendants' actions and inactions and/or that OAC 5160-43(A)(3), facially and as applied to Plaintiff:

    1.   Violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution by denying Plaintiff 's application to participate in and depriving him of the benefits of the SRS Program on the basis of his disabilities and/or diagnoses, illness, and/or conditions while providing participation in and the benefits of the SRS program to similarly situated individuals without a legitimate government interest;

2. Violate the Medicaid Act's availability requirement, 42 U.S.C. § 1396a(a)(10)(A);

3. Violate the Medicaid Act's comparability requirement, 42 U.S.C. § 1396a(a)(10)(B);

4. Violate Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, by discriminating against Plaintiff on the basis of his disabilities and/or diagnoses, illness, and/or conditions;

5. Violate the Americans with Disabilities Act, 42 U.S.C. § 12132 by discriminating against Plaintiff on the basis of disability and/or diagnoses, illness, and/or conditions by failing to grant a reasonable and necessary accommodation to Plaintiff, and by utilizing methods of administration that have the effect of discriminating against Plaintiff; and/or

6. Violate Section 504 of the Rehabilitation Act, 42 U.S.C. § 794 by discriminating against Plaintiff solely on the basis of disability and/or diagnoses, illness, and/or conditions, by failing to grant a reasonable and necessary accommodation to Plaintiff, and by utilizing methods of administration that have the effect of discriminating against Plaintiff.

C. An award of compensatory and consequential damages to Plaintiff in an amount that would fully compensate Plaintiff for his financial harm, emotional distress and suffering, embarrassment, humiliation, pain and anguish, violation of his dignity, and other damages that have been caused by the actions and inactions of Defendants.

D. An award of reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988 and all other applicable statutes; and

VERIFICATION OF PLAINTIFF JOSEPH GARDI

I verify under penalty of perjury that the allegations contained in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

Executed on _____, 2023 (date)    _____
                                          Joseph Gardi